[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court by virtue of summons and complaint dated January 23, 2002 and filed on February 4, 2002 and returnable February 12, 2002 in which complaint the plaintiff petitioner, Amy Y. Albl, sought a dissolution of the marital union, a fair division of property and debts, alimony, child support, a request for the restoration of her maiden name and sole custody of the minor child. Accompanying the complaint were the usual automatic orders and, in addition thereto, the return by the state marshal indicating in-hand service on the defendant, Douglas E. Albl.
On February 4, 2002, the defendant appeared by counsel.
On February 6, 2002, the plaintiff filed a motion for contempt, which does not appear to have been acted upon. Subsequently on February 19, 2002, the plaintiff filed another motion for contempt but it does not appear that that motion was acted upon.
On February 19, 2002, the plaintiff petitioner filed a financial affidavit and an affidavit concerning children.
On February 22, 2002, the defendant filed a motion for joint legal custody and visitation pendente lite which was the subject of an agreement and accord between the parties and approved by the court, Devine, J., on March 11, 2002.
On February 21, 2002, the defendant filed a motion for referral to Family Relations pendente lite which was granted by the court, Devine, J., on March 11, 2002.
On March 13, 2002, the court, Devine, J., approved a withholding order for support in the amount of $130.00 a week. The order requiring the CT Page 15491 defendant to pay the same through withholding. On March 11, 2002, a certain stipulation was filed with the court signed by both the plaintiff and the defendant and their respective counsel, which stipulation had to do with a parenting schedule and support pendente lite. This stipulation in item #6 indicated the child support in the amount of $130.00 per week and, in addition thereto, $51.00 per week as a child care contribution.
The defendant filed a financial affidavit on March 11, 2002 and incident thereto there was filed on March 11, 2002 a support guidelines form indicating the recommended amount for support for the one minor child in the amount of $126.00 a week and child care contribution in the amount of $47.00 a week for a total of $173.00 a week.
On March 20, 2002, the requisite form was filed indicating that the plaintiff had completed the parenting education program and on April 12, 2002, there was filed the form verifying that the defendant had completed the parenting education program.
The plaintiff and the defendant with their respective counsel appeared before the Court on November 19 and November 20, 2002 and the matter was heard to a conclusion.
The court makes the following findings of fact.
The plaintiff and the defendant were united in marriage on January 1, 1999 in Tallahassee, Florida. Both parties have been residents of Connecticut for more than one year prior to the initiation of the instant petition. The plaintiffs birth or maiden name was Amy Y. Willis. Neither party has been the recipient of welfare or assistance from the State of Connecticut or any town, city or municipality or subdivision thereof.
There is one minor child issue of this marital union whose name is Avery Grace Albl born on May 9, 2000. There are no other minor children and no other children have been born to the plaintiff petitioner from the date of the marriage to the present time.
At the outset of the proceedings before the court, counsel represented that certain issues were agreed as between the plaintiff and the defendant and that those issues were set out and spelled out within the confines of the plaintiffs proposed orders. There were, however, a number of items which were not the subject of an accord and agreement which the court will touch on in due course.
On April 30, 2001, the plaintiff became aware of the fact that she was unfortunately afflicted with a Stage II breast cancer problem. This CT Page 15492 condition was determined incident to a medical examination and diagnosis. The court will touch upon the content of the diagnosis as set forth in the exhibits presented to the court and accepted. The plaintiff underwent certain surgical procedures after the determination of her condition and thereafter went through a sixmonth regimen of chemotherapy. The plaintiffs family in the main is in the State of Florida. At the time that the plaintiff was diagnosed with breast cancer, she took the minor child Avery Grace out of day care and the defendant's mother came to Connecticut for the plaintiffs first chemotherapy regimen and looked after the child. A subsequent second chemotherapy treatment was required. The plaintiff at that time was quite ill. Her white blood count was too low and she was unable to care for the child at that time. The plaintiff at this juncture was bedridden. The plaintiff subsequently, because of the support and assistance that her family could provide, decided to complete the requisite chemotherapy treatment in Florida. When the plaintiff returned after that treatment and that procedure had been concluded, the plaintiff felt that the atmosphere in the marriage was different. The plaintiff testified that the defendant would spend his evenings elsewhere and with single women. On a variety of occasions, the plaintiff was quite ill. The plaintiffs testimony was to the effect that the defendant refused to help with day care problems as to the minor child Avery Grace. Said child, according to the testimony, is asthmatic.
The plaintiffs testimony was to the effect that the defendant became verbally abusive and that he, on one occasion, hit her on the arm. The plaintiffs testimony was to the effect that the chemotherapy treatment that she was receiving had a tendency to push her into a premature menopausal state and at that point, the plaintiff considered the possibility of having certain embryos frozen because of her concern in that regard.
The plaintiff is age 27. As concerns the menopause problem, the plaintiff felt that to embark upon taking hormones, which apparently were recommended, that the course was too perilous to her. The plaintiff was in the state of Florida for the period July of 2001 to November 2001 for treatment in that state and during that time frame the only contact between the plaintiff and the defendant was by phone.
The plaintiffs testimony was to the effect that her condition is now in remission. The plaintiff has undergone five surgical procedures including a double mastectomy, which had been preceded by a lumpectomy. Apparently on the medical advice that she has received, the possibilities for future medical problems are greatly increased due to the problems that have beset her. CT Page 15493
The plaintiffs request at the time of trial as to the issue of alimony was as follows: the plaintiff requested alimony in the amount of $1.00 a year until the minor child attained age 18. Although there are numerous issues on which the parties are agreed, which the court will touch on in due course, the parties are not in agreement with regard to the issue of alimony and therefore that matter is in the hands of the court.
The plaintiff is presently undergoing reconstructive surgery and one of the plaintiffs requests was that the defendant be responsible for one half of medical bills incurred but not yet known as concerns her treatment. The plaintiff indicated that she was not making a request for medical bills incurred in the future.
The parties are not in agreement with regard to Christmas visitation pertaining to the young child except to the extent that the plaintiff and the child may travel to Florida this year 2002; financial issues incident thereto, however, are left to the discretion of the court.
The plaintiffs concern is that she should not be, in her words, "locked in" to agreements as to Christmas every year, mindful of costs incident thereto. The plaintiffs request as concerns the matter of an exemption for tax purposes is that the same should be accorded to her. There is one real estate asset, which is located in Florida, which stands in the name of the defendant only and on which there is an encumbrance. The plaintiff feels however that she has financially contributed to the maintenance of that residence which is income-producing and asks the court to consider her request incident thereto; to wit, 50% of the equity in the Florida property.
At the time of the initiation of the petition, the defendant cashed in certain stock options but indicates that this was because of certain checks that were returned for insufficient funds and the money realized from the options was used to make the checks good.
At the time that the parties were united in marriage, both parties owned automobiles of their own. At one point in time during the marriage, the plaintiffs motor vehicle was involved in an accident and the insurance proceeds incident thereto were subsequently used for the securing of a motor vehicle for the defendant. One of the plaintiffs request is for 50% of the value of the defendant's present vehicle.
The defendant is presently engaged in litigation with regard to an accident that he was involved in. After that accident, in which apparently the plaintiff was not involved, the plaintiff however nursed CT Page 15494 the defendant through care in order to return him to good health.
The plaintiff makes a request with regard to counsel fees. This pertaining to problems arising as concerns the October 17, 2002 hearing which did not go forward.
The defendant is employed by United Space Alliance, a part of NASA, in Florida.
It would appear that the medical affliction visited on the plaintiff precipitated certain conduct which manifestly put great strains on the union. The plaintiff indicated that her cancerous condition is presently in remission and this is borne out by the medical reports which the court will touch on.
The plaintiffs surgery, incident to reconstructive matters, began in October of 2002. As concerns the appliances and some contents in the Florida property solely in the name of the defendant, it is the plaintiffs position that she contributed to items in the home including appliances.
Mindful of her medical condition, the plaintiff was out of work as concerns her position at Pfizer's for a period of about seven months. During that time frame she received 70% of her pay from her employer Pfizer.
The plaintiff is now age 28. This was her first marriage and, as noted, her maiden name was Willis. The plaintiff secured a bachelor's degree in biochemistry from Florida State University. The plaintiff is presently pursuing a master's degree at Brown University in biochemistry. The plaintiffs last class incident to the formal work required for a master's degree will occur in December of 2002; however, a thesis is thereafter required before the matter may be finalized. It is contemplated by the plaintiff that the master's degree may be awarded in June of 2003. The plaintiff is employed by Pfizer's, a pharmaceutical conglomerate, as an assistant scientist. She has been at Pfizer's for 4-1/2 years.
As concerns the one minor child, a little girl, Avery Grace, now age2-1/2, except for the asthmatic condition, the child, according to the plaintiff, is in good health.
Certain agreed items as concerns the amount of the support, child care contribution and percentages over a certain base figure for medicals will be touched on in reviewing those items that are the subject of an CT Page 15495 agreement between the parties.
After the determination initially of the plaintiffs condition and the lumpectomy, subsequent medical examination and treatment determined that there was an additional cancerous condition which resulted in the removal of both breasts.
The plaintiff testified that the defendant told her on one occasion, mindful of the fact that the defendant was represented to be philosophically inclined to the belief of karma, that she, the plaintiff, must have done something bad in a prior life and that those actions brought the cancerous condition upon her in this life.
The plaintiff indicated that the defendant felt that she was less of a woman after the surgery.
The defendant testified that there were, in his words, trying times in the marriage and that the parties resorted to marriage counseling. This resort to marriage counseling occurred after the child Avery Grace was born. After the birth of the child, the marriage went along fairly well but apparently still some problems. As earlier indicated, in April of 2001, the plaintiff, through self-examination, determined that there was a problem in one of her breasts. After an initial diagnosis, a second opinion was secured. The defendant claimed that he was concerned with regard to the plaintiffs condition.
At the end of April and at the early part of May of 2001, the plaintiff and the defendant did take a trip to Tahiti. The defendant testified that he attended some medical appointments with the plaintiff. The defendant kept working here in Connecticut while the plaintiff was in Florida except on one occasion when he journeyed to Florida for one week. During that time frame, the defendant checked on the status of the real estate in his name located in Florida. The defendant represented that he attended support groups with regard to endeavoring to preserve the marital union and his position was to the effect that when the plaintiff returned from Florida after the initial chemotherapy regimen that things were different. The defendant characterized the plaintiff at that juncture as being angry and depressed and professed that he endeavored to be supportive of the plaintiff, It was the defendant's position that the plaintiff rejected his help. In January of 2002, the defendant left and moved in with a friend. The defendant claimed that the plaintiff had threatened to do him harm and that was what prompted him to move out. The defendant claimed that the plaintiff maintained a handgun in her night stand. There are now and for some times past apparently practically no contacts between the plaintiff and the defendant. CT Page 15496
The defendant's testimony was to the effect that he only learned at trial as to the double mastectomy.
The defendant acknowledged that he is a disciple or believes in the doctrine of karma and that, in his words, if one is a good person, life will be good.
The property in Florida in the name of the defendant was purchased by him in July of 1995 for $62,500.00. It consists of land comprising 1/8 of an acre, a brick, two-bedroom residence with bath and fruit trees thereon. The Florida property has been rented and the rental income has been used for making the mortgage payments. At one point in time, apparently the plaintiffs parents lived in this Florida property but that is no longer the case. Neither the plaintiff nor the defendant during the marriage ever lived in the Florida property in Titusville.
The Ford Explorer automobile purchased originally by the defendant for $10,400.00 is now represented to be worth $2,000.00. The 1994 Ford Windstar, the defendant represents, was purchased for the plaintiff by him.
On November 22, 1999, the defendant was involved in an automobile accident and injured. He sustained certain soft tissue injuries and rehabilitation was required. The defendant claims a certain disability, that he sustains pain in his neck and lower back. It was the defendant's position that this condition is permanent. The defendant, however, did not lose any time from his work as a result of the accident.
There is apparently a suit pending by the defendant against the individual responsible for the proximate cause of the accident but it was represented to the court that there is no claim or count within the confines of the complaint for loss of consortium. No copy of the complaint or detailed status as concerns that litigation was presented to the court.
Prior to the defendant's present position, he worked for and was employed by Pratt Whitney. When Pratt Whitney moved certain aspects of their operation to Georgia, the defendant was not requested to move with the job and the defendant then went to Florida where he secured his instant employment.
The defendant has a bachelor's degree in business management from Alberta Magnus College. CT Page 15497
In reference to the earlier adverted to cashing in of certain options, the defendant indicated that the plaintiff had issued several checks on the credit union account which bounced and the liquidation of the options was for the purpose of curing those deficiencies. The defendant represented that he had five stock options left.
The defendant believes that the marriage has irretrievably broken down. It was the defendant's position that the plaintiffs conduct has changed, presumably attributable to her medical situation.
The defendant is age 35. He described his health as being good. The only medication he takes is non-prescription pain killers for back problems. His bachelor's in business management was secured in May of 2001.
The defendant verified that the minor child Avery Grace is afflicted with asthma but otherwise in good health.
The plaintiff in assessing the causes of the breakdown indicated that the defendant spent evenings in various bars and like establishments and that when she returned from Florida after the chemotherapy undertaken in that state that the defendant told her that he no longer wanted her.
The plaintiff indicated that she enjoys her employment position with Pfizer and hopes for other opportunities there.
From the dissolution of marriage form, the court notes that the defendant's date of birth is November 2, 1967; that the plaintiffs date of birth is November 20, 1973; that the date of separation of the parties was December 25, 2001; that this is the second marriage for the defendant and the first for the plaintiff both have college degrees.
From the financial affidavits filed by the parties, the court notes that the plaintiff is employed as an assistant scientist at Pfizer's, the pharmaceutical conglomerate located in Groton. Her gross weekly wage is $1,096.00. Deductions including federal withholding, FICA, state withholding, medicare, medical and dental insurance and long-term disability, $303.31 for a net weekly wage of $792.69. In addition thereto, the plaintiffs financial affidavit reflects support being received from the defendant in the amount of $130.00 a week and certain deductions therefrom so that the plaintiffs total net weekly income is $757.98. Weekly expenses total $1,024.07. The plaintiffs total indebtedness as reflected on her affidavit amounts to $46,939.00. The plaintiff has no interest of record in any real estate. The plaintiff shows a 1999 Ford Windstar motor vehicle valued at $14,225.00, loan CT Page 15498 balance the same, equity $0.00; $100.00 in household furnishings; $500.00 in Ledge Light Federal Credit Union; a Pfizer 401K plan valued at $27,804.00.
The defendant's financial affidavit reflects that his occupation is that of an orbital processor with United Space Alliance at Cape Canaveral in Florida; gross weekly wage, $1,058.00; total deductions for federal, FICA, medicare, $256.00 for a net of $802.00. Weekly expenses, $757.00. Debt totaling $29,868.00. The Florida real estate known as 3260 Alamander Court in Titusville, Florida is valued at $60,000.00 with a mortgage of $56,000.00 for a total equity of $4,000.00. The defendant has two motor vehicles, a Mazda 2000 Protege valued at $10,300.00; loan balance, $10,000.00; equity, $300.00. A 1991 Ford Explorer valued at $2,000.00; loan balance, $0.00; equity $2,000.00. Bank accounts, Kennedy Space Center and American Eagle Checking, $1,350.00. Stocks, Fidelity, $300.00. 401K valued at $44,000.00.
From Plaintiffs Exhibit I, a statement from Lawrence and Memorial Hospital concerning the plaintiff. The exhibit consists of a number of medical reports; the first being dated February 6, 2002 from Dr. Hellman indicating that as of May 10, 2001, the diagnosis of' the plaintiff was a Stage II breast cancer. The statement goes on to indicate surgical procedures, chemotherapy, radiation and indicating that the plaintiff enjoys a remission. A letter from Dr. Hellman dated June 24, 2002, Dr. Hellman being the plaintiffs oncologist, indicating that the plaintiffs condition is in remission and that recurrence is not anticipated.
The exhibit contains various detailed medical data including pathology reports and statements by one of the plaintiffs surgeons, Dr. Kurowski, indicating the nature and extent of the treatment. The exhibit also contains a statement from Yale University School of Medicine setting forth findings, history, and matters of like nature under the authorship of Dr. Michael DiGiovanna.
Plaintiffs Exhibit 2 is a statement from the defendant's credit union reciting and containing a variety of information but with particularity the transfer on January 31, 2002 of the sum of $2,064.49; the same presumably being funds secured from the exercise of the stock options which were used for the purpose of curing certain checks for which there was insufficient funds.
Defendant's Exhibit 1 is a statement beginning January 2, 2002 and running through January 31, 2002 as concerns the account of the defendant with regard to the issuance of certain checks, deposits and indicating checks that had been apparently written by the plaintiff that were the CT Page 15499 subject of the insufficient fund problems.
 Discussion
This is a marriage of about three years and nine months insofar as the parties being together is concerned; a relatively brief marital union.
As indicated, the second marriage for the defendant and the first for the plaintiff. One daughter now age 2-1/2. Both of the parties have college educations. Both of the parties have what appear to be relatively stable employment situations. It would clearly appear that the medical affliction visited on the plaintiff was a severe strain on the marriage and created a number of problems.
The plaintiffs testimony appeared to be candid and straightforward and it would appear that the defendant's attitude toward the plaintiff once the medical problems arrived was less than what might have been hoped for and apparently a relatively unsympathetic course of conduct on his part particularly the defendant's comment to the effect that the plaintiff was being punished for conduct in a prior lifetime.
Mindful of the various surgical procedures that the plaintiff has undergone and the treatment incident thereto, including the chemotherapy, the plaintiff seems to have coped as well as what might reasonably be expected under trying circumstances and has returned to and continued her employment and the plaintiff is endeavoring to maintain as much financial independence as possible.
Under the circumstances, the requests of the plaintiff on balance, mindful of the areas that are the subject of an agreement, are relatively modest. There is no indication of a pattern of physical violence. The plaintiff made reference to only one occasion where she had been struck on the arm. There was no testimony as concerns the immoderate use of alcohol nor the resort to any drug problem.
 The Law
The court has jurisdiction in this matter. Both of the parties being physically present before the court and both of the parties being represented by counsel of record. The pleadings in the matter were closed at the time of trial.
The issue of child support is an agreed matter which appears to be in conformity with the requisite guidelines. CT Page 15500
The court has considered Connecticut General Statute § § 46b-8
1, 82, and 84 in considering the resolution of matters pertaining to property and alimony and a dissolution of marriage proceeding.
The court has endeavored to weigh the relevant statutory criteria, see Collucci v. Collucci, 33 Conn. App. 536 (1994) and Rummel v. Rummel,33 Conn. App. 214 (1993). The court has considered all of the applicable case law that governs a matter of this nature. The court has considered the testimony of the parties, their candor or lack thereof, the exhibits and the arguments of counsel. In considering the issue of alimony, the court has considered the length of the marriage, the cause of the breakdown and dissolution, the age, health, station, occupation, education and employability of each of the parties and the estate and needs of the parties. The court has considered the respective financial positions of the plaintiff and the defendant as elicited at the time of trial and predicated upon their respective financial affidavits, their prospects for future income and opportunity. The court has considered the issue of fault. The court has carefully considered the plaintiffs situation as to matters of health.
The court enters the following orders mindful of the areas of agreement between the plaintiff and the defendant and made known to the court at time of trial. A portion of the following orders are contained within the confines of the plaintiffs proposed orders dated November 19, 2002.
The plaintiff and the defendant are awarded joint custody of the little child Avery Grace Albl born May 9, 2000; the plaintiff mother to be the primary custodial parent and caretaker. The defendant is awarded reasonable rights of visitation with the minor child to include the following: every other Memorial Day starting in 2003, every other Labor Day starting in 2004, every other Easter starting in 2004, every other Thanksgiving starting in 2003. As concerns Christmas of 2002, the parties have reached an accord between them as concerns this Christmas, which will shortly be upon us. The accord which they have worked out shall apply only to the year 2002 and not for subsequent Christmas visitation. The defendant shall be awarded three non-consecutive weeks (seven days and six nights) arranged for 90 days in advance by agreement of the parties. If the minor child is sick or ill, the plaintiff may cancel the visitation and arrange to have it made up at a later date.
The defendant is to pay all costs incident to visitation as to the child mindful of the present residences of the parties; to wit, the plaintiff in Connecticut and the defendant in Florida, including, but not limited to, travel expenses for the minor child; however, the plaintiff and the defendant shall share equally the cost of the minor child's CT Page 15501 transportation to Florida for the year 2002. While the defendant exercises his visitation, he shall provide the plaintiff with his itinerary, phone number and address and allow the minor child telephonic contact with the plaintiff during every 48 hour period. This provision by agreement of the parties, notwithstanding the very tender age of the child. Neither party shall interfere with the telephonic contact or the minor child with the other; however, all non-emergency calls must be made between 7:30 a.m. and 8:30 p.m.
In the event that the plaintiff requires additional medical surgical treatment, she shall be allowed to take the minor child with her to Florida and in that event, she shall allow the defendant reasonable contact with the child during her sojourn there. The defendant shall pay to the plaintiff by an immediate wage execution, child support in the amount of $142.59 per week which appears to be in conformity with the guideline worksheet. In addition, the defendant shall pay to the plaintiff 40% of the child care expenses (his present share amounting to $55.63 per week).
In the event that the child care expenses fluctuate, consideration may be given to having that payment made by terms other than a wage execution.
The plaintiff shall maintain medical and dental insurance for the minor child as available through her employment. In the event that the plaintiff loses such insurance coverage, the defendant shall obtain it for the benefit of the minor child.
The unreimbursed medical expenses as concerns the minor child should be divided pursuant to the child support guidelines (presently 40% after the first $100.00). The parties shall share the costs of the minor child's higher education expenses with each paying 50% of such costs. These expenses shall include tuition, books, room, board and so forth. These costs shall be limited to a total of eight semesters, full time or part time. The cost shall be limited to the cost of a higher education at the University of Connecticut for Connecticut residents or the equivalent if the child lives in another state. The parties' obligation shall end at the end of any semester in which the child turns age 25. This provision would appear to satisfy the requirements of Public Act No. 02-128.
In accordance with their agreement, the plaintiff and defendant shall each retain the personal possessions presently in their possession.
The plaintiff and defendant shall each retain all of their right, title and interest in and to their own retirement accounts, IRA's and stock CT Page 15502 options.
At the plaintiffs request. her maiden name of Amy Yvonne Willis, may be restored to her.
The parties shall retain the motor vehicles presently in their possession and indemnify and hold the other harmless incident thereto.
The defendant shall obtain and/or maintain life insurance in the amount of $25,000.00 for the benefit of the minor child. This envisioning the defendant's present coverage incident to his employment. The plaintiff shall be the beneficiary of said insurance coverage as trustee but to hold the proceeds, if any, in trust for the minor child.
By agreement of the parties, the plaintiff would be allowed to expend from said insurance proceeds the sum of $10,000.00 without order of court for good cause shown during the minority of the child in the event that insurance proceeds are received.
The defendant shall execute an authorization allowing the plaintiff to permit inquiry by her from time to time to verify the status of the insurance coverage and her being the beneficiary thereof as trustee and that the same is in good standing and current.
The plaintiff shall receive the tax exemption as concerns the dependent minor child for the year 2002. Thereafter, the exemption shall alternate with the defendant being granted the exemption for 2003 and the matter continuing in like nature.
This portion of the orders is by direction of the court and not by virtue of an agreement of the parties. In the same vein, the issue of alimony being in dispute but mindful of the requests presented on both sides, the plaintiff shall receive the sum of $1.00 per year in alimony until the minor child turns age 18. The amount thereof shall be modifiable and shall be non-modifiable as to the term.
The plaintiff shall receive the sum of $2,000.00 from the defendant as concerns the equity in the Florida property; the same being allowed to the plaintiff by virtue of her contribution as to expenses on said property during the marriage.
Mindful that the defendant used the proceeds from the stock options that he cashed in to pay for checks that were not good; which checks had been issued by the plaintiff, the court enters no further order incident thereto. CT Page 15503
The plaintiff and the defendant shall each pay and hold harmless the other as concerns the debts and obligations shown on their respective financial affidavits with the following exceptions, which shall be considered to be joint debts: 1) the plaintiffs present outstanding medical bills, 2) any bill or obligation associated with the parties' prior marital residence at 32A Crescent Avenue in Niantic, 3) the tax obligation or rate bill from the town of Groton that the plaintiff was obliged to pay in order to register her vehicle.
The plaintiff shall have a reasonable period of time to achieve the refinancing of her Capital One account as reflected on her financial affidavit and to hold the defendant harmless incident thereto as concerns any obligation he may have on said debt.
The defendant shall, within a reasonable period of time, refinance the Navy FCU loan with the Navy Federal Credit Union and indemnify and hold the plaintiff harmless therefrom.
The defendant shall pay to the plaintiff, within a reasonable period of time, the sum of $500.00 as concerns the defendant's equity in the 1991 Ford Explorer automobile.
As concerns the defendant's pending litigation and lawsuit incident to the automobile accident in which he was apparently injured, the same being captioned Douglas Albi v. Harold Stein the accident occurring on November 22, 1999, the court enters no order at this time mindful of the fact that according to the testimony there was no separate count or claim for loss of consortium when the suit was initiated nor does the court have any reliable information at this juncture as concerns the full nature or the extent of the injuries and/or any estimate as to the amount that might reasonably be recovered. Insofar as that issue is concerned, the court directs that when that litigation is resolved and finalized that the defendant or his counsel shall make known to the plaintiff the amount and extent of the recovery, if any, and in the event that a motion for modification based upon a substantial change in circumstances is filed, the matter will be considered.
There being some confusion between the parties or their counsel as concerns the claim for attorney's fees and the reason therefore, each party shall pay and be responsible for their own counsel fees. No award in that respect is ordered by the court.
Mindful of the difficult and permanent medical problems which the plaintiff has suffered, and mindful of her age and her being the parent of CT Page 15504 a very young child, and the defendant's less than sympathetic attitude, the court is of the opinion that the principal cause of the breakdown of the marital union should be laid at the defendant's door.
The court notes that no Family Relations report was offered during the proceedings nor any witness from that office offered.
 ___________________ Austin, J.
CT Page 15505